IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.    13-cv-01349-WYD-MJW

CONTINENTAL CREDIT CORPORATION, a Colorado corporation,

   Plaintiff,

v.

JEFFREY DRAGOVICH, an Individual,

   Defendant.

---

## ORDER

---

This matter comes before the Court on Plaintiff Continental Credit Corporation's ("Continental") Motion for Temporary Restraining Order and Order to Show Cause, filed May 23, 2013 ("Motion").  [Doc. No. 3].   On May 29, 2013, I held a hearing on the Motion.   Continental appeared in person with counsel, and Defendant Jeffrey Dragovich ("Dragovich"), who was *pro* se, appeared via telephone.[1]   At the May 29, 2013 hearing, I granted Continental's motion and entered a Temporary Restraining Order.   I set a preliminary injunction hearing for June 11, 2013, which was continued to June 28, 2013 upon motion of the parties.   For the reasons stated on the record at the June 28, 2013 hearing and set forth below, I hereby vacate the Temporary Restraining Order and deny Continental's request for a preliminary injunction.

I.     BACKGROUND

This civil action was commenced on May 23, 2013, by Continental's filing of a

---

[1] Dragovich retained counsel shortly after the May 29, 2013 hearing.   Dragovich and his counsel appeared in person at the June 28, 2013 hearing.

Complaint [Doc. No. 1]. The Complaint avers three claims for relief: (1) Declaratory Judgment of Enforceability of a Confidentiality Agreement and Covenant not to Compete; (2) Breach of Contract; and (3) Misappropriation of Trade Secrets under Colo. Rev. Stat. §§ 7-74-101, et seq.

The Court has personal jurisdiction over the parties to this action and Dragovich has consented to jurisdiction in this Court for purposes of the present action. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 and 1367. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1391(c).

In January 2010, Continental, a Colorado company, hired Dragovich as a Regional Account Manager with an annual base salary of $32,500 with the potential for additional bonuses and commissions. As part of his employment responsibilities, Dragovich created and maintained a Referral Source List, which contained the names and contact information of potential business contacts along with some personal notes about recent contacts, telephone calls and meetings. Continental claims that this Referral Source List is protected as a trade secret. In January 2013, Dragovich was hired by Go Clean Credit, an Arizona company, as an outside sales representative with an annual base salary of $66,000 with the potential for additional commissions.

II.     ANALYSIS

In determining whether a preliminary injunction should issue, I have carefully considered all relevant pleadings, legal authority, evidence, and arguments presented at both the May 29, 2013 and June 28, 2013 hearings.

In order to obtain a preliminary injunction, the moving party bears the burden of establishing that four factors weigh in its favor: (1) a likelihood of success on the merits;

(2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)).   The Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory,* 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).   Consequently, granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule."  *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir. 1984).

"[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *See Schrier v. University of Colorado,* 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)) (internal quotation marks omitted).   As such, there are three types of particularly disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.  *Westar Energy, Inc. v. Lake,* 552 F.3d 1215, 1224 (10th Cir. 2009) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd on other grounds,* 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)).   Before a court grants

relief under one of these three types of preliminary injunctions, a movant seeking such an injunction must make a heightened showing of the four factors. *RoDa Drilling,* 552 F.3d at 1209; *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 342 F.3d 1170, 1177 (10th Cir. 2003). Here, Dragovich does not argue that any of these types of disfavored preliminary injunctions are implicated in this case.

In this case, Continental seeks a preliminary injunction enjoining Dragovich, a former Regional Account Manager of Continental who voluntarily resigned from his employment, from disclosing its trade secrets to an alleged competing credit repair company, Go Clean Credit.[2] Continental also seeks to enjoin Dragovich from contacting and working with Continental's customers and referral sources and from working for a direct competitor for one year according to the terms of the Confidentiality Agreement and Covenant Not to Compete (the "Agreement"), executed by both Dragovich and a representative of Continental on December 16, 2012.

### A. Likelihood of Success on the Merits

I now turn to my analysis of the standard requirements for a preliminary injunction. I find that Continental has failed to meet the first requirement of demonstrating a substantial likelihood of success on the merits of its Misappropriation of Trade Secrets and Breach of Contract Claims.

In order to prevail on its breach of contract and misappropriation of trade secrets claims, Continental's non-compete covenant must be enforceable, which requires a

---

[2] Based on the testimony presented at the June 28, 2013 hearing, I have serious doubts as to whether Continental and Go Clean Credit are direct competitors. The evidence suggests that while both companies are in the credit repair industry, the services offered and price points charged are completely different. Go Clean Credit is much more focused on litigation rather than the standard practice of sending letters to credit bureaus.

finding that the Agreement's non-compete provisions are not void under Colorado law. Non-solicitation and non-competition agreements are generally void in Colorado unless they fall into one of the statutory exceptions set forth in Colo. Rev. Stat. § 8-2-113(2). Colo. Rev. Stat. 8-2-113(2) provides, in relevant part:

> Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to: ... (b) Any contract for the protection of trade secrets; ... (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel.

Colo. Rev. Stat. 8-2-113(2) (b) and (d).

Thus, Continental is required to show that the Agreement's non-compete covenant fell under one of the exceptions to the statute—either that the covenant was for the protection of trade secrets or that the employee was a member of executive or management personnel.   On this record, I find that Continental has failed to demonstrate that either exception applies in this case.

### 1. Trade Secret Exception

"For a covenant not to compete to fit within the trade secret exception to § 8-2-113(2)(b), the purpose of the covenant must be the protection of trade secrets, and the covenant must be reasonably limited in scope to the protection of those trade secrets."   *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 910 (Colo. App. 1997); *see Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1133 (10th Cir. 2003).

"What constitutes a 'trade secret' is a question of fact for the trial court."   *Porter Industries, Inc. v. Higgins*, 680 P.2d 1339, 1341 (Colo. App. 1984).   Under the Colorado Uniform Trade Secrets Act ("CUTSA"), a trade secret is defined as:

-5-

> the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value.   To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7-74-102(4).   Additionally, the Colorado Court of Appeals has listed the following factors for courts to consider in recognizing a trade secret:

> (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, *i.e.*, by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Porter Industries, Inc. v. Higgins*, 680 P.2d 1339, 1342 (Colo. App. 1984) (internal quotations omitted).   The United States Supreme Court has stated that "[t]he most commonly accepted definition of trade secrets is restricted to confidential information which is not disclosed in the normal process of exploitation."   *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979).

Here, the only trade secret to which Continental lays claim is the Referral Source List, which Dragovich created and maintained while he worked for Continental.   Based on the evidence presented at the hearings, the Referral Source List is a lengthy spreadsheet of names and contact information of numerous mortgage lenders and brokers that are available in the public domain.   The list also contains a column of

"Notes."

As I stated at the June 29, 2013 hearing, the record is hazy as to whether this "Notes" column contains any more than vague information about a potential lead, a telephone call or a meeting that may or may not have occurred.  I find that the "Notes" do not convey any information about how much business a particular contact has referred in the past or promised to refer in the future.  Moreover, Dawn McCraw, the owner of Go Clean Credit, credibly testified that she could recreate Continental's Referral Source List in just a few days using information available to the public on the Internet.  In fact, Go Clean Credit has already created and routinely uses its own lists which contain similar information as the Referral Source List.  McCraw further stated that there is nothing in the "Notes" column that would be of interest to her in her business capacity and that the information was too general to be valuable to another credit repair company.  For example, she testified that she would find information that a particular contact had sent over a certain number of clients resulting in a specific amount of business to be helpful or valuable.  However, Continental's Referral Source List does not contain any such detailed information.  Accordingly, I find the Referral Source List contains information that is readily available to the public at large.  Other credit repair companies could easily recreate the list using public information (and competitors are in possession of much of this same information), and the "Notes" column is too general to be of value.  Therefore, I find that Continental has failed to meet its burden of showing that the Referral Source List is a trade secret.

    2. <u>Management Exception</u>

Similarly, the determination of whether Dragovich was "executive or management

personnel" is a question of fact.   In determining whether the management exception applies, the Court should look beyond an employee's mere title to see what his job actually entails.   *DoubleClick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005) (citing *Management Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763 (Colo. App. 1988) and *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789 (Colo.   App. 2001)).

Here, the evidence shows that while Dragovich's title at Continental was "Regional Account Manager," his duties and responsibilities suggest that he was a sales person. He supervised two people, but had no hiring or firing authority.   His duties involved contacting mortgage brokers and other entities in the lending industry who might potentially refer credit repair customers to Continental.   In contrast, another judge on this Court, Judge Brimmer, found that a defendant who supervised fifty employees, had only three levels of management above her, and was in charge of a significant part of the company's business, was a management employee.   See *DoubleClick Inc.*, 402 F. Supp. 2d at 1258.   Thus, I find that Continental failed to show that Dragovich was a management employee.

III.   CONCLUSION

Based on the foregoing, Continental failed to show that the Agreement's non-compete covenant falls under one of the statutory exceptions, making it void and unenforceable under Colorado law.   Accordingly, I find that there is no substantial likelihood of success on the merits of Continental's breach of contract and misappropriation of trade secrets claims.   I decline to address the remaining preliminary injunction elements, as the resolution of them will have no bearing on the outcome.   See *Russell v. Department of Air Force,* 915 F.Supp. 1108, 1122 (D.Colo. 1996) ( "Having

decided that [plaintiff] has not shown clearly that he has a substantial likelihood of success on the merits, I need not address the remaining factors ....").[3]  Therefore, because a preliminary injunction is an extraordinary remedy and Continental failed to show clear and unequivocal relief, I deny Continental's request for a preliminary injunction.   Accordingly, it is

ORDERED that the Temporary Restraining Order [ECF No. 13] is hereby **DISSOLVED AND VACATED.**   It is

FURTHER ORDERED that Continental's request for a preliminary injunction is **DENIED.**

Dated:   July 1, 2013

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] However, even if Continental had showed a substantial likelihood of success on the merits, I find that it failed to show that it will suffer irreparable harm in the absence of preliminary relief.   Further, the evidence suggests that were the injunction to issue, Dragovich would suffer significant harm in the form of potentially losing his job with Go Clean Credit.   Finally, Continental identified nothing about the balance of equities or the public interest that would alter the conclusion reached here